O

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## LAREDO DIVISION

|  |  |  |
|---|---|---|
| **JAVIER GUTIERREZ VELA as** | § | |
| **Attorney-in-Fact for ROMEO** | § | |
| **GUTIERREZ VELA,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **Civil Action No. 5:02-cv-37** |
| | § | **Misc. Action No. 5:06-mc-2** |
| | § | **Bankruptcy Adversary No.: 02-5010** |
| **ENRON OIL & GAS CO.; HOUSTON** | § | |
| **PIPELINE CO.; and PANHANDLE GAS** | § | |
| **CO.,** | § | |
| | § | |
| *Defendants*. | § | |

## <u>OPINION & ORDER</u>

Pending before the Court is Plaintiff Javier Gutierrez Vela's Notice of [Motion for] Non-Suit, [Bk. Dkt. No. 22], Plaintiff's duplicative Motion to Dismiss, [Bk. Dkt. No. 20], Plaintiff's Motion to Remand, [Bk. Dkt. No. 20], Defendant Enron Oil & Gas Company's Motion to Dismiss and/or Motion for Summary Judgment, [Bk. Dkt. No. 25], and Plaintiff's Motion for Leave to File a Response to Defendant's Motion for Summary Judgment, [Bk. Dkt. No. 37]. These Motions are brought to the Court by way of United States Bankruptcy Judge Wesley W. Steen's Recommendation for Withdrawal of Reference of this suit to Bankruptcy Court [Bk. Dkt. No. 36].

## I.   PROCEDURAL HISTORY AND RELEVANT FACTS

Plaintiff owns the land and mineral estate subject to an oil and gas lease with Defendant Enron Oil & Gas Company (EOG). [Bk. Dkt. No. 21, ¶ 2]. On January 3, 1998, Plaintiff filed suit in the 49th Judicial District, Zapata County, Texas, against Enron Corporation, Enron Oil & Gas (EOG), Houston Pipeline Company, and Panhandle Gas Company, alleging Defendants' violation of express duties and implied covenants under the Lease. [Bk. Dkt. No. 5 at 7; *see also* Bk. Dkt. No. 36 at 1 (referring to date of the original petition)]. Originally, Plaintiff invoked the so-called "alter-ego" and/or "single business enterprise" theories, arguing that Defendants are in fact alter-egos of one another, and therefore Plaintiff should be entitled to recover from them jointly and severally. [Bk. Dkt. No. 5 at 18].

On December 2, 2001, then-Defendant Enron Corporation filed for bankruptcy. [Civ. Dkt. No. 1, ¶ 6]. Thus, on March 1, 2002, Defendant Houston Pipeline filed its Notice of Removal, arguing that Plaintiff's claims against Defendants were "related to the bankruptcy case of Enron," and therefore removal was proper under 28 U.S.C. § 1452.[1] [Civ. Dkt. No. 1, ¶ 7]. Upon removal, this Court referred the case to the United States Bankruptcy Court for the Southern District of Texas. [Mc. Dkt. No. 4].

In an attempt to win remand, Plaintiff dismissed his claims against Enron Corporation, hoping to convince the Bankruptcy Court that Enron's absence—the party whose insolvency triggered removal jurisdiction—stripped the federal courts of subject matter jurisdiction over the suit (or at least compelled discretionary remand under 28 U.S.C. § 1441(c)[2]). [Bk. Dkt. No. 2, ¶

---

[1] "A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction [over] such claim or cause of action under" 28 U.S.C. § 1334. Section 1334 establishes the federal courts' exclusive jurisdiction over bankruptcy cases filed under Title 11 of the United States Code.

[2] "Whenever a separate and independent claim . . . within the [district court's] jurisdiction . . . is joined with one or more otherwise nonremovable claims or causes of action, . . . the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates."

5]. The Bankruptcy Judge presiding over this matter, Judge Wesley W. Steen, denied remand, asserting that because some of the remaining Defendants were affiliates of Enron Corporation, Plaintiff's claims were "inextricably intertwined" with the liquidation of Enron Corporation's estate, and therefore the entire suit should remain in bankruptcy court. [Bk. Dkt. No. 9 at 4]. In his persistence, Plaintiff filed his Notice of [Motion for] Non-Suit (and a duplicative Motion to Dismiss) with regard to Defendants Houston Pipeline and Panhandle Gas. [Bk. Dkt. Nos. 20, 22]. Plaintiff then moved for remand once more, arguing that since "Enron Corporation affiliates and subsidiaries are [no longer] involved in this litigation, . . . [Plaintiff's claims] are in no way 'related' to the bankruptcy case of Enron Corporation." [Bk. Dkt. No. 20, ¶ 7]. On January 28, 2003, Defendant EOG filed its Response to Plaintiff's Motion to Remand, [Bk. Dkt. No. 24]. On February 12, 2003, EOG filed the Motion to Dismiss and/or Motion for Summary Judgment now before the Court. [Bk. Dkt. No. 25].

Rather than ruling on any of the pending motions, Judge Steen filed his Memorandum Opinion and Recommendation for Withdrawal of the Reference [and for] Entry of Judgment Dismissing All Claims with Prejudice, [Bk. Dkt. No. 36], in which he explained that although his court enjoyed jurisdiction to dispose of several of Plaintiff's claims via EOG's Motion to Dismiss, there was a "possibility" it lacked jurisdiction to dismiss all of them, a result Judge Steen has concluded is warranted. [Bk. Dkt. No. 36]. Thus, since, in Judge Steen's opinion, his court lacked the subject matter jurisdiction necessary to "afford all relief to which the Defendants are entitled," [Bk. Dkt. No. 36 at 4-5], this Court should withdraw its reference of the suit to the [b]ankruptcy [c]ourt so that it may more efficiently issue "one order unambiguously dispos[ing] of the entire case." [Bk. Dkt. No. 36 at 1].

The Court must now decide whether to withdraw its reference of this matter to the Bankruptcy Court, and, if it does so, it must rule on the aforementioned pending motions.

## II.    DISCUSSION

### A.  Withdrawal of Reference

Title 28 U.S.C. § 157(a) provides that "[e]ach district court may provide that any or all cases under [T]itle 11 and any or all proceedings arising under [T]itle 11 or arising in or related to a case under [T]itle 11 shall be referred to the bankruptcy judges for the district." Paragraph (d) in turn provides that a "district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion . . .  for cause shown."

Although no on-point authority is extremely detailed in explaining what constitutes "cause" for permissive withdrawal, the Fifth Circuit has stated that such can exist only if premised upon a "sound articulated foundation." *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998 (5th Cir. 1985). Thus, the Fifth Circuit in *Holland America* established that "once [a] case is referred to the bankruptcy court under section 157(a), the district court does not have unlimited power to withdraw reference." *Burger King Corp. v. B-K of Kansas, Inc.*, 64 B.R. 728, 731 (D. Kan. 1986) (interpreting *Holland America*).

Among the considerations a district court should consider in deciding whether to withdraw a reference are: (1) promoting uniformity in bankruptcy administration; (2) reducing forum shopping and confusion; (3) fostering the economical use of the debtors' and creditors' resources; (4) expediting the bankruptcy process; and (5) whether there is a jury demand on file in the district court. *Holland America*, 777 F.2d at 999. As such, the background normative concern governing the propriety of permissive withdrawal is "judicial economy." *Id.*

All of the above factors operate neutrally with the exception of the fifth—Plaintiff has not filed a jury demand in the District Court. If he had, such would work marginally in favor of remand. *Id.* ("[T]here is a jury demand in the district court file. Its continued existence may influence the district court's decision, for while we do not reach the issue, there is some doubt whether bankruptcy courts can conduct jury trials . . . ."); *In re OCA, Inc.*, 2006 U.S. Dist. Lexis 69314, 13-14 (E.D. La. 2006).

Importantly, however, this case is no longer related to any *ongoing* bankruptcy proceeding. Rather, the only manner in which the suit is still "related to a bankruptcy proceeding" is the fact that Plaintiff's claims, as will be discussed in more detail *infra*, may be precluded by a *prior* bankruptcy judgment. Bankruptcy courts exist primarily to hear either "core bankruptcy proceedings" under 28 U.S.C. § 157(b)(1),[3] or proceedings otherwise "related to" ongoing bankruptcy proceedings under § 157(c)(1).[4] Thus, although the aforementioned statutes do not necessarily limit bankruptcy courts' jurisdiction to *ongoing* bankruptcy matters,[5] the relationship between Plaintiff's live claims and the primary purpose bankruptcy courts are meant to serve is relatively tenuous. This reality, combined with the modern congestion of bankruptcy courts, the fact that a memorandum from Judge Steen urging dismissal of Plaintiff's claims would likely be subject to review by this Court,[6] and the fact that this cause has been pending for so long, all

---

[3] An example of a "core" bankruptcy proceeding is a "matter[] concerning the administration of the [insolvent] estate . . . ." 28 U.S.C. § 157(b)(2).

[4] A proceeding is a "non-core" but yet "related to" proceeding if "the outcome . . . could *conceivably* have any effect on the estate being administered in bankruptcy." *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 569 (5th Cir. 1995).

[5] Thus Judge Steen's assertion that, "with respect to the claims allegedly precluded by *res judicata*, the bankruptcy court has jurisdiction to issue an order dismissing those claims since they are in protection of a judgment issued . . . in a prior bankruptcy case." [Bk. Dkt. No. 36 at 5].

[6] In hearing matters merely "related to" bankruptcy proceedings, Judge Steen would be required to "submit proposed findings of fact and conclusions of law to the district court," and those findings would be subject to review by this Court before becoming controlling. 28 U.S.C. § 157(c)(1).

counsel in favor of efficient disposal of all pending matters before this Court. Accordingly, the Court WITHDRAWS its reference of this matter from the Bankruptcy Court.

### B.  Plaintiff's Motion for Non-Suit and Motion to Remand

Plaintiff no longer wishes to prosecute his claims against Defendants Houston Pipeline Company and Panhandle Gas Company, and asks that his claims against those parties be dismissed with prejudice. [Bk. Dkt. No. 22]. Plaintiff's Motion for Non-Suit is GRANTED, as is his duplicative Motion to Dismiss, [Dkt. No. 20]. As such, Plaintiff argues that the Court should remand this entire case to state court since the basis for federal jurisdiction is now allegedly absent. [Bk. Dkt. No. 20, ¶¶ 5-12].

"[I]f jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events." *Doddy v. Oxy USA*, 101 F.3d 448, 456 (5th Cir. 1996) (quoting *Freeport-McMoran, Inc. v. K. N. Energy, Inc.*, 498 U.S. 426, 428 (1991)). Therefore, the Court rejects Plaintiff's suggestion that it now lacks subject-matter jurisdiction merely because the basis for removal jurisdiction is now absent.

Of course, the Court may exercise discretionary remand under 28 U.S.C. § 1441(c), which Plaintiff asks the Court to do. "[W]hen dealing with motions to remand pendent claims, courts should exercise their discretion in a way that best serves the principles of economy, convenience, fairness, and comity." *Id. at* 456 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988)). Thus, in the "usual case," a district court will dismiss the state claims upon dismissing all federal ones, but such is not a "mandatory rule to be applied inflexibly in all cases." *Carnegie*, 484 U.S. at 350 n.7.

In *Doddy*, the Fifth Circuit, in upholding a district court's refusal to exercise discretionary remand, noted that:

by the time the [the plaintiffs] filed their second motion to remand, this lawsuit had been in litigation for more than two years, the trial date was less than a month away, the parties had already filed more than 300 pleadings, most of the parties had already prepared extensive discovery disclosures in accordance with the Federal Rules of Civil Procedure, and summary judgment motions on behalf of many of the remaining defendants were pending. Moreover, the [plaintiffs'] remaining causes of action did not raise any novel or unsettled issues of state law; their claims could be readily decided in federal court under established Texas tort principles. We are satisfied that the district court did not abuse its discretion in declining to remand.

*Doddy*, 101 F.3d at 456.

Although not exactly identical to those in *Doddy*, the facts in the instant matter counsel against discretionary remand. First, this litigation has been ongoing for approximately nine years, and it has been in federal court for over five years. *See Carnegie-Mellon*, 484 U.S. at 351 ("when a federal-law claim is eliminated at an *early* stage of the litigation, the District Court has a powerful reason to choose not to continue to exercise jurisdiction." (emphasis added)). Further, all but one of the original Defendants have been dismissed since removal, and the basis for dismissing the only remaining Defendant is strong. Indeed, that basis—the protection of a prior federal-court judgment per principles of *res judicata*, discussed *infra*—is arguably an independent basis for denying remand in this context. *See In re Howe*, 913 F.2d 1138, 1143 (5th Cir. 1990) (Affirming a district court's refusal to remand because of the "nexus between [a] bankruptcy court's earlier proceedings and the [plaintiffs'] present action."). Lastly, as is made clear below, the Court, in disposing of all pending matters, can avoid application of state law entirely.

In short, Plaintiff's case for discretionary remand is exceedingly weak. Accordingly, the Court DENIES Plaintiff's Motion to Remand.

## C.  The Remaining Pending Motions

Judge Steen formally recommends that this Court "dismiss[] all parties and all claims with prejudice . . . ." [Bk. Dkt. No. 36].

In light of Plaintiff's non-suit against Panhandle Gas Company and Houston Pipeline Company, the only claims that remain live are those lodged in Plaintiff's "Original Complaint."[7] [Bk. Dkt. No. 21].

Plaintiff's Complaint is extremely conclusory and only sporadically clear. Thus, although it is rather difficult to delineate his asserted causes of action from his factual averments, the Court gathers that Plaintiff (1) seeks a declaratory judgment that "Plaintiff is entitled to elect to rescind the lease contract due to fraudulent concealment and inducement and due failure of consideration for the lease," [Bk. Dkt. No. 21, ¶ 3]; and further alleges (2) breach of implied covenant to market "and account," [Complaint, ¶¶ 10-14]; and (3) breach of contract, [Complaint, ¶ 18].

### 1.        Plaintiff's Motion for Leave

Before the Court discusses the viability of Plaintiff's claims, it must address Plaintiff's pending Motion for Leave to File Response to Defendant's Motion. [Bk. Dkt. No. 37].

According to Plaintiff, after EOG filed its Motion, the Bankruptcy Court directed Plaintiff to respond only to EOG's argument that some of his claims were barred by *res judicata*, and to reserve his counter-arguments to EOG's other assertions for a later date. [Bk. Dkt. No. 37, ¶ 1]. EOG agrees with Plaintiff's characterization of the Bankruptcy Court's instruction, [Bk. Dkt. No. 38], but nevertheless opposes leave, arguing that Plaintiff failed to appear before the Bankruptcy

---

[7] Despite its title, Plaintiff's "Original Complaint" is actually his Sixth Amended Complaint, as Plaintiff has previously filed his Fifth Amended Petition. Judge Steen notes in his Recommendation that Plaintiff failed to move for leave to amend his complaint. [Bk. Dkt. No. 36 at 3 n.4]. However, because Plaintiff seeks to amend his complaint only to narrow his causes of action, and because accepting Plaintiff's amendments greatly simplifies disposition of this entire case and actually benefits Defendant, the Court accepts it as Plaintiff's live pleading.

Court on the date Judge Steen was to establish the deadline by which Plaintiff would be required to respond to EOG's Motion in its entirety. [Bk. Dkt. No. 38].

The docket confirms that Plaintiff failed to appear at the February 27, 2003 hearing. [Bk. Dkt. No. 34]. Indeed, Plaintiff's counsel had previously failed to appear for an earlier hearing and, in denying Defendant's Motion to Dismiss for Want of Prosecution, Judge Steen admonished counsel that future delinquency could result in dismissal. [Bk. Dkt. No. 17].

"It is well established that [a] district court has the authority to dismiss or to enter default judgment [against a party] . . . for failure to . . . comply with its orders or rules of procedure." *Brown v. Thompson*, 430 F.2d 1214, 1216 (5th Cir. 1970) (quoting *Flaska v. Little River Marine Construction Co.*, 389 F.2d 885, 887-88 (5th Cir. 1968)). Such authority is "one inherent in the courts" and it "may be exercised *sua sponte* under proper circumstances." *Id.* If the Court's power to dismiss Plaintiff's entire suit is "inherent," certainly its power to impose the lesser sanction of denying leave to respond to EOG's Motion to Dismiss in equally "inherent." *See also Glo Co. v. Murchison & Co.*, 397 F.2d 928, 929 (3d Cir. 1967) ("The court has, and should have, a wide discretion as to penalties for failure of diligent prosecution of litigation."); *Lyford v. Carter*, 274 F.2d 815, 815-816 (2d Cir. 1960) ("The Court has a wide discretion as to penalties for failure of diligent prosecution.").

Additionally, that Plaintiff has not had an opportunity to respond to the entirety of EOG's Motion is belied by his own Brief Regarding *Res Judicata* and *Controlling Texas Law*, [Bk. Dkt. No. 32 (emphasis added)], in which Plaintiff expressly and at length attacks Defendant EOG's arguments premised on substantive Texas oil and gas law.

Lastly, any further response on the part of Plaintiff would be futile, as the Court need not visit Texas substantive law to conclude that Defendant EOG is entitled to dismissal on all claims. Plaintiff's Motion for Leave is therefore DENIED.

### 2.   The Viability of Plaintiff's Claims

According to the Court's reading of the Complaint, Plaintiff (1) seeks a declaratory judgment that "Plaintiff is entitled to elect to rescind the lease contract due to fraudulent concealment and inducement and due failure of consideration for the lease," [Bk. Dkt. No. 21, ¶ 3]; and further alleges (2) breach of implied covenant to market "and account," [Complaint, ¶¶ 10-14]; and (3) breach of contract, [Complaint, ¶ 18].

First, Plaintiff has already stipulated that he would not "seek to terminate or rescind the leases . . . at issue in this action and [would] not amend any pleading in the future to reassert such claim." [Bk. Dkt. No. 25-2, Ex. 4]. "Where a stipulation limits the issues to be tried or considered by the jury, those issues are excluded from consideration." *Rosenboom Mach. & Tool v. Machala*, 995 S.W.2d 817, 822 (Tex. App.—Houston [1st Dist.] 1999, pet. denied); *see also Federal Lanes v. City of Houston*, 905 S.W.2d 686, 689 (Tex. App.—Houston [1st Dist.] 1995, writ denied) ("A stipulation constitutes a contract between the parties, and between the parties and the court; as such, it is binding upon the court as well as the parties."). Thus, Plaintiff's claim that he is entitled to rescission of the Lease is precluded.

Next, Plaintiff alleges that Defendant has violated its implied covenants to "market and properly account." [Bk. Dkt. No. 5]. Although Plaintiff's description of his claims is a bit convoluted, it is clear that at the heart of each lies the allegation that EOG breached its duty to properly calculate and/or pay Plaintiff royalties pursuant to both the express terms of the Lease and operator covenants implied therein by law.

Defendant EOG argues that Plaintiff's claims premised upon a misallocation of royalties are precluded by *res judicata*. [Bk. Dkt. No. 25 at 19]. The basis of this argument is a 1995 Agreed Judgment by the United States Bankruptcy Court for the Southern District of Texas discharging EOG "from all liability to [Plaintiff] on account of or in any way arising out of the payment . . . of the royalties or revenues from the above described leases or gas units . . . ." [Bk. Dkt. No. 26 (Exhibit 12) at 41]. Defendant EOG argues that, since *res judicata* precludes re-litigation not only of claims *actually* adjudicated previously but also those that *should have* been advanced previously, all of Plaintiff's claims centering on EOG's royalty obligations under the Lease prior to the date of the Agreed Judgment are precluded. [Bk. Dkt. No. 25 at 19].

According to Judge Steen, "with respect to the claims allegedly precluded by *res judicata*, the bankruptcy court has jurisdiction to issue an order dismissing those claims since they are in protection of a judgment issued . . . in a prior bankruptcy case." [Bk. Dkt. No. 36 at 5]. Judge Steen continues, stating "[f]or reasons set forth in EOG's memorandum, the Court concludes that those claims should be dismissed." [Bk. Dkt. No. 36 at 5].

Although bankruptcy courts generally exist to hear "core" bankruptcy proceedings under 28 U.S.C. § 157(b), under paragraph (c) they may also entertain "non-core" matters that are otherwise "related to" a bankruptcy proceeding. Pursuant to § 157(c), a bankruptcy judge's conclusions as to non-core matters are tendered not in the form of a "ruling," but rather a memorandum proposing "findings of fact and conclusions of law." The statute also provides that a bankruptcy judge's recommendation is subject to *de novo* review only upon specific objection. Neither party has objected to Judge Steen's Recommendation. Accordingly, the Court reviews such only for clear error.

Per principles of *res judicata*, "a bankruptcy judgment bars a subsequent suit if: 1) both cases involve the same parties; 2) the prior judgment was rendered by a court of competent jurisdiction; 3) the prior decision was a final judgment on the merits; and 4) the same cause of action is at issue in both cases." *In re Baudoin*, 981 F.2d 736, 740 (5th Cir. 1993). The primary issue of contention between EOG and Plaintiff with respect to claim preclusion is whether the fourth prong is satisfied here—that is, whether there exists an identity of claims between the 1995 bankruptcy proceeding and Plaintiff's current suit. Plaintiff argues that since he, in the bankruptcy proceeding, "never complained about the propriety of any EOG operations on [their] lands . . . EOG's common-law operator duties—and its then-known gas sales to affiliates—were not at issue in either action." [Bk. Dkt. No. 32, ¶¶ 3-4].

As noted above, identity-of-claims analysis involves the determination of whether "[t]he plaintiff raises the same cause of action or claim in both suits." *Matter of Howe v. Vaughan*, 913 F.2d 1138, 1143-44 (5th Cir. 1990). To answer this question, the Fifth Circuit has adopted the so-called "transactional test" in deciding whether an identity of claims exists. *Id.* at 1144. According thereto, a claim is precluded if it is based on the "same nucleus of operative facts" as the claim(s) in the prior action. *Id.* Put differently, "[t]he rule is that *res judicata* 'bars all claims that were or *could have been* advanced in support of the cause of action on the occasion of its former adjudication, . . . not merely those that were adjudicated.'" *Id.* (quoting *Nilsen v. City of Moss Point*, 701 F.2d 556, 559 (5th Cir. 1983)). As such, it matters little if "EOG's common-law operator duties . . . were not at issue" in the previous bankruptcy action. [*See* Bk. Dkt. No. 32, ¶¶ 3-4]. Rather, what matters is whether Plaintiff's current claims arise from the same "nucleus of operative facts" as the 1995 suit.

Courts define a given "nucleus of operative facts" broadly such that, for example, a common nucleus exists if a plaintiff's claims arise out of the same contract upon which the prior adjudication centered. For example, in *In Re Baudoin*, the plaintiffs had previously filed for bankruptcy after their loans from the defendant bank had become due. 981 F.2d at 738. In the preceding bankruptcy matter, the bank filed proofs of claim, which, with permission of the plaintiffs' trustee, the bankruptcy court allowed. *Id.* Later, the plaintiffs attempted to sue the bank for breach of the loan agreement, claiming that the bank had wrongfully attempted to collect on the loan before it had become due, thereby forcing the plaintiffs into bankruptcy. *Id.* at 738, 743. The Court found that the latter claim was precluded because it arose out of the same nucleus of operative facts—*i.e.*, the various of obligations per the loan agreement—as the bank's claims against the estate in the preceding bankruptcy matter. *Id.* at 743.

The plaintiffs in *Baudoin* attempted to define the factual "nucleus" very narrowly, arguing that their later claim sought not to dispute whether, or how much, they were obligated to repay the bank under the loan agreement, but rather whether "the bank breached its duty of good faith, which, while not resulting in extinguishment of [the plaintiffs'] obligation to repay the indebtedness, [made] the [b]ank . . . liable" on a qualitatively distinct theory of recovery. *Id.* The Fifth Circuit rejected this argument, stating that "[t]he contracts at issue [in the recent case] are the very loan agreements which were the basis of the [b]ank's proof of claim in the prior bankruptcy. It is difficult to imagine a more common nucleus of operative facts." *Id.*

In the instant matter, Plaintiff's claim that Defendant EOG breached covenants implied in the Lease via Texas oil and gas law is analogous to the Baudoins' claim premised upon the duty of good faith, implied in the loan contract. That is, although Plaintiff did not litigate in the bankruptcy proceeding whether EOG breached those duties, he should have, for such claims

pertain to EOG's obligations to Plaintiff under the Lease; that such obligation comprised the nucleus of operative facts at issue in the prior adjudication is obvious from the 1995 Agreed Judgment, which clearly discharged EOG "from all liability . . . in any way arising out of the payment . . . of the royalties or revenues from the above described leases . . . ." [Bk. Dkt. No. 26 (Exhibit 12) at 41]. Thus, Judge Steen's conclusion that Plaintiff's breach of implied covenant and breach of contract[8] claims are precluded by *res judicata* is not clearly erroneous.

The Court must make one final note regarding the operation of *res judicata* doctrine in the instant matter. Defendant, in invoking claim preclusion, understates its case. Plaintiff sues for damages arising out of conduct predating the 1995 Agreed Judgment and *continuing* up to the date Plaintiff filed this suit in 1998. According to Defendant EOG, *res judicata* bars [Plaintiff] from re-litigating EOG's royalty obligations prior to the date of this Court's 1995 judgment . . . ." [Bk. Dkt. No. 25 at 12]. As such, Defendant seems to suggest that Plaintiff's royalty-centered claims are barred only to the extent that they seek recovery for injury caused by EOG's pre-1995 conduct. This is not the case.

Obviously, *res judicata* "does not . . . bar a suit based on acts of the defendant that . . . occurred subsequent to the final judgment asserted . . . ." *Blair v. City of Greenville*, 649 F.2d 365, 368 (5th Cir. 1981). Rather, the general rule is that "[a] subsequent wrong constitutes a new cause of action." *Id.* Thus, for example, Plaintiff would not be precluded from asserting a theory of recovery the basis of which did not exist during the 1995 bankruptcy proceeding; to propose otherwise would be to mandate clairvoyance on the part of plaintiffs. This axiom, however, is inapposite here.

---

[8] Plaintiff states his breach of contract claim in one paragraph, arguing only that Defendant's alleged breach of implied covenants also amounts to breach of contract. [Bk. Dkt. No. 21, ¶ 18]. Of course, Plaintiff cannot, by merely re-labeling a cause of action, circumvent the effect of *res judicata*.

In *Davis v. Dallas Area Rapid Transit*, the Fifth Circuit considered whether an identity of claims existed where the second suit was premised upon the same continuing pattern of employment discrimination as the first, even though the specific incidents alleged in the second action occurred after adjudication of the first action. 383 F.3d 309 (5th Cir. 2004). The plaintiffs argued that their second suit could not be barred because the specific conduct alleged in the second claim occurred after the previous judgment had become final. *Id.* at 314. In disagreeing, the Fifth Circuit focused primarily on the fact that the conduct alleged in the second suit, although "occurring" subsequent to the prior judgment, was part of a "continuing course of allegedly discriminatory conduct," such that the "acts" occurring between the dates alleged in the second suit were deemed to be the same as the those alleged in the prior. Thus, when the complained-of acts in both suits "constitute a series of connected transactions," the suits assert "the same claim" for *res judicata* purposes.[9] *Id.*

The conduct of which Plaintiff presently complains began prior to the 1995 Agreed Judgment, and continued uninterrupted to the date Plaintiff filed the instant suit. [Bk. Dkt. No. 20, ¶ 1 ("The complained of conduct continues to the present day.")]. Therefore, the segment of EOG's continuous conduct occurring after the 1995 Agreed Judgment became final is not a

---

[9] This rule may beg the question as to how a plaintiff may seek redress for conduct that continues after that conduct is adjudged wrongful. Various prospective remedies are available in such a circumstance. For example, under the Federal Declaratory Judgment Act, 28 U.S.C. § 2202, "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." *See also United Teacher Assocs. Ins. Co v. Union Labor Life Ins. Co.*, 414 F.3d 558, 570 (5th Cir. 2005) (Stating that under § 2202, "the prevailing party [in a declaratory judgment action] may seek further relief in the form of damages or an injunction." (quoting *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 537 (5th Cir. 1979)); *Nat'l Fire Ins. Co. of Hartford v. Bd. of Pub. Instruction of Madison County, Fla.*, 239 F.2d 370, 376, n.11 (5th Cir. 1956) ("the Federal Declaratory Judgment Act contemplates that all necessary or proper relief based on the declaratory judgment should be granted."); *Edward B. Marks Music Corp. v. Charles K. Harris Music Publishing Co.*, 255 F.2d 518, 522 (2d Cir. 1958) (interpreting § 2202 to mean that "the further relief sought . . . need not have been demanded, or even proved, in the original action for declaratory relief. [Rather,] [t]he section authorizes further or new relief based on the declaratory judgment, and any additional facts which might be necessary to support such relief can be proved . . . in an ancillary proceeding if . . . necessary."). Thus, via such "supplementary" remedies such as an injunction or a declaratory judgment, a plaintiff may reserve the ability to seek redress for a defendant's continued delinquency.

"subsequent wrong" for *Blair* purposes. Rather, applying *Davis* to the instant matter, Plaintiff's claims centering on EOG's alleged failure to honor express provisions in the Lease, or covenants implied therein by law, are precluded by *res judicata* in their entirety.

### III.    CONCLUSION

The Court accepts the Bankruptcy Judge's Recommendation, [Bk. Dkt. No. 36], and therefore **WITHDRAWS** reference of this case from the Bankruptcy Court. Plaintiff's Motion for Non-Suit, [Bk. Dkt. No. 22], is **GRANTED**. Plaintiff's duplicative Motion to Dismiss, [Bk. Dkt. No. 20], is **GRANTED**. Plaintiff's Motion to Remand, [Bk. Dkt. No. 20], is **DENIED**. Plaintiff's Motion for Leave, [Bk. Dkt. No. 37], is **DENIED**. Defendant EOG's Motion to Dismiss and/or Motion for Summary Judgment, [Dkt. No. 25], is **GRANTED**.

IT IS SO ORDERED.

Done this 29th day of May, 2007, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**